UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD DICKIE, | * |
| Petitioner, | * |
| v. | * Civil Action No. 1:15-cv-13512-ADB |
| COLLETTE SANTA, | * |
| Respondent. | * |

**MEMORANDUM AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**

BURROUGHS, D.J.

Petitioner Richard Dickie was sentenced to two concurrent two-year and six-month terms following convictions—on a theory of joint venture—for illegal possession and sale of a large capacity weapon in violation of Mass. Gen. Laws ch. 269, §§ 10(m) and 10F(a). Presently before the Court is Richard Dickie's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. [ECF No. 1]. Petitioner argues that the state courts violated his due process rights by permitting a jury to convict him without finding that his coventurer, his brother Jonathan Dickie, was not licensed and not otherwise authorized to possess and sell the firearm at issue. For the reasons explained herein, the Court <u>DENIES</u> the petition for a writ of habeas corpus.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

In reviewing a habeas petition from an individual in custody pursuant to the judgment of a state court, federal courts are required to presume that factual determinations made by the state courts are correct. 28 U.S.C. § 2254(e)(1). Following a trial, Petitioner was convicted by a jury.

1

Because the state courts have not summarized the facts underlying his conviction on appeal, see Commonwealth v. Dickie, No. 12-P-660, 28 N.E.3d 11 (Table), 2015 WL 1401688 (Mass. App. Ct. March 30, 2015), the factual background below is based on the trial record. [ECF No. 16 ("Record")].

In early February 2010, Jonathan Dickie and David Christian offered to sell Jason Stewart, who was working as a confidential informant, an AR15-type semi-automatic assault rifle for $1,500 at 136 Smith Street in Lowell, Massachusetts. [Id. at 339–46, 362–63]. Stewart arrived at the premises wearing an electronic monitoring and recording device that captured the discussion taking place. [Id. at 20, 343–44]. Petitioner Richard Dickie, Jonathan Dickie, Jonathan's girlfriend, and David Christian were present. [Id. at 365–66]. In the kitchen, with Petitioner standing six to seven feet away, Jonathan Dickie took out the assault rifle, showed it to Stewart, and told Stewart that "only the police and the Army [are] supposed to get these." [Id. at 86, 365–69].[1] As Stewart started to pay for the rifle, Jonathan Dickie pointed to Petitioner, saying "it's going to Richie, he had to cough it up." [Id. at 90]. Stewart paid Jonathan Dickie, who then gave the money to Petitioner. [Id. at 367]. After purchasing the rifle, Stewart turned it over to the Bureau of Alcohol, Tobacco, Firearms and Explosives, [id. at 370], and it then went to the Massachusetts State Police Crime Laboratory for examination, [id. at 395]. The Crime Laboratory determined that it was a semi-automatic rifle with a 31 live cartridge capacity magazine. [Id. at 94–95, 390–98].

In December 2011, a jury convicted petitioner of illegally selling and possessing a large capacity weapon in violation of Mass. Gen. Laws ch. 269 sections 10(m) and 10F(a) based on a joint venture theory. Dickie, 2015 WL 1401688, at *1. "The theory of 'joint venture' liability

---

[1] The transcript of the conversation suggests that, at the time of the sale, the rifle was presented to Stewart as fully-automatic.

finds its roots in the concept of accessorial or accomplice liability." Commonwealth v. Humphries, 991 N.E.2d 652, 658 (Mass. 2013) (quoting Commonwealth v. Zanetti, 910 N.E.2d 869, 879 (Mass. 2009)). "Thus, in order to establish liability for firearm possession under a theory of joint venture, it [was] not necessary that the Commonwealth prove that [Petitioner] had actual or constructive possession of a firearm, but only that [he] 'was [an] accessory to another identified defendant in possessing a firearm.'" Id. (quoting Commonwealth v. Brown, 737 N.E.2d 1, 4 (Mass. App. Ct. 2000)). A potential defense to both charges was that Petitioner's coventurer, *i.e.* his brother, legally possessed and sold the assault rifle because he held a license or an exemption applied.[2] Massachusetts Rule of Criminal Procedure 14(b)(3), provides:

> If a defendant intends to rely upon a defense based upon a license, claim of authority or ownership, or exemption, the defendant shall, within the time provided for the filing of pretrial motions by Rule 13(d)(2) or at such later time as the judge may direct, notify the prosecutor in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, a license, claim of authority or ownership, or exemption may not be relied upon as a defense. The judge may for cause shown allow a late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

Mass. R. Crim. P. 14(b)(3); see also Humphries, 991 N.E.2d at 660–61. At no time prior to appeal, however, did petitioner assert such a defense or object to the requirement that such a defense needed to be asserted. See Dickie, 2015 WL 1401688, at *1.

Following his convictions, Petitioner appealed to the Massachusetts Appeals Court, arguing in relevant part that requiring a joint venturer to plead a defense based on the license

---

[2] Mass. Gen. Laws ch. 269, § 10F(a), the prohibition on sale, and Mass. Gen. Laws ch. 269, § 10(m), the prohibition on possession, both contain carve outs for actions "permitted under this section or chapter 140." For example, an individual may lawfully possess a large capacity firearm if he holds a valid Class A license. Mass. Gen. Laws ch. 140, § 131(a). In addition to the potential license defenses and exemptions, section 10(m) prescribes a mandatory minimum of one year, instead of two and a half years, for individuals who possess a "valid firearm identification card issued under section 129B," though that is not a "defense for a violation."

3

status of his coventurer violated Petitioner's right to due process. See id. Petitioner's appeal was stayed pending the Massachusetts Supreme Judicial Court's ("SJC") decision in Humphries. 991 N.E.2d 652; [Record at 8]. As here, the defendant in Humphries had been convicted on firearms charges on a theory of joint venture. 991 N.E.2d at 655. In Humphries, the SJC concluded, first, that "a defendant charged with joint venture possession of a firearm bears only the burden of raising the defense of license. Once raised, the Commonwealth must prove beyond a reasonable doubt that the coventurer was not authorized to possess the firearm." Id. at 660. Second, Humphries, citing the plain text of Massachusetts Rules of Criminal Procedure Rule 14(b)(3) and SJC precedent, concluded that a "[f]ailure to provide notice under rule 14 'renders the claim [of license] unavailable as a defense.'" Humphries, 991 N.E.2d at 661 (quoting Commonwealth v. O'Connell, 783 N.E.2d 417 (Mass. 2003)); see also Mass. R. Crim. P. 14(b)(3).

Following the ruling in Humphries, the Appeals Court affirmed Petitioner's convictions, noting that "the obligation to plead the statutory exception," *i.e.* the defense of license, "rests with the defendant, whether he is charged as a principal or as a joint venturer. The defendant failed to raise any such defenses at trial. Accordingly, they are unavailable to him now." Dickie, 2015 WL 1401688, at *1 (internal citation omitted). On June 4, 2015, the SJC denied further review. Commonwealth v. Dickie, 32 N.E.3d 316 (Table) (Mass. 2015). On October 5, 2015, Petitioner filed his petition for a writ of habeas corpus in this Court. [ECF No. 1].

## II. LEGAL STANDARD

Petitioner asserts one ground for federal habeas relief: that permitting his conviction without requiring the Commonwealth to prove that his coventurer was not licensed to possess and sell the firearm at issue violated his Fourteenth Amendment right to due process. [ECF No. 19 at 8]. Respondent argues that Petitioner's claim that his due process rights were violated was

4

waived under state law by his failure to raise the issue at trial, and that, even if Petitioner has not defaulted on his claim, it nevertheless fails under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). [ECF No. 26].

### a. Adequate and Independent State Grounds

Generally, "federal habeas review is precluded ... when a state court has reached its decision on the basis of an adequate and independent state-law ground." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "Typically, 'the fact that a claim is procedurally defaulted in state court is an adequate and independent state ground precluding federal habeas relief.'" Hodge v. Mendonsa, 739 F.3d 34, 43 (1st Cir. 2013) (quoting Walker v. Russo, 506 F.3d 19, 21 (1st Cir. 2007)). This rule reaches those situations in which "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 730. "At the same time, '[t]he question whether a state procedural ruling is adequate is itself a question of federal law.'" Hodge, 739 F.3d at 43 (quoting Beard v. Kindler, 558 U.S. 53, 60 (2009)). "To be considered an 'adequate' ground to bar habeas review, the state procedural rule that is the basis for a procedural default ruling must be regularly and consistently enforced by the state courts." Pina v. Maloney, 565 F.3d 48, 53 (1st Cir. 2009). The "hallmarks of inadequacy that would allow [a court] to reach the merits" include a rule that is sporadically applied or irregularly put into practice. Hodge, 739 F.3d at 44.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" Coleman, 501 U.S. at 750. "Cause" requires

5

"'some objective factor external to the defense' which 'impeded counsel's efforts to comply with the State's procedural rule.'" Lynch v. Ficco, 438 F.3d 35, 46 (1st Cir. 2006) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Prejudice" requires at least a "reasonable probability that . . . the result of the proceeding would have been different." Id. at 48 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)); see also Costa v. Hall, 673 F.3d 16, 26 (1st Cir. 2012) (requiring actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions). Unless a petitioner establishes cause and prejudice for a procedural default, a district court may consider the merits of a habeas petition only if the petitioner shows a "fundamental miscarriage of justice [will] occur if [the court] fails to consider the claim." Gunter v. Maloney, 291 F.3d 74, 83 (1st Cir. 2002). "To show that a fundamental miscarriage of justice would occur in the habeas context, [a] 'petitioner must establish actual innocence.'" Id.

### b. Habeas Review Under AEDPA

If a federal district court is able to reach the merits of a state prisoner's habeas petition, its review is governed by the AEDPA. The AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[3]

A state court decision is "contrary to" clearly established Supreme Court precedent if: (1) the state court reaches a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court confronts a set of facts that are materially indistinguishable from a

---
[3] Petitioner does not request relief based on § 2254(d)(2).

decision of the Supreme Court and nevertheless arrives at a different conclusion. Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A state court decision is considered an "unreasonable application" of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 413. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)). It requires that the petitioner show that the state court decision applied clearly established law in a way that was "objectively unreasonable." Sanchez v. Roden, 753 F.3d 279, 299 (1st Cir. 2014). Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### III. DISCUSSION

Petitioner challenges the above-discussed pleading requirement, established by Massachusetts Rules of Criminal Procedure Rule 14(b)(3) and clarified as to its effect on alleged joint venturers by Humphries, 991 N.E.2d 652, based on his contention that the rule allowed him to be convicted on less than "proof beyond a reasonable doubt for every fact necessary to constitute the crime with which he is charged." [ECF No. 19 at 8 (citing In re Winship, 387 U.S. 358, 364 (1970)]. Respondent avers that Petitioner's argument is procedurally defaulted because he failed to plead a license defense or to timely object that the rule requiring him to do so violated his due process rights. [ECF No. 26 at 3–7]. Alternatively, Respondent argues that Petitioner's claim does not warrant habeas relief because the Appeals Court decision was neither

7

contrary to, nor involved an unreasonable application of, clearly established federal law. [Id. at 7–13].

The threshold question is whether the Appeals Court's denial of Petitioner's appeal was based on an adequate and independent state finding of procedural default. In his appeal, Petitioner raised precisely the due process argument that he makes here. See Dickie, 2015 WL 1401688, at *1 ("[D]efendant now asserts that it would be a violation of due process to require a defendant charged on a joint venture theory to plead a defense such as the license status of the armed joint venturer where it is not reasonable to presume he would have knowledge thereof."); [see also Record at 15]. Respondent's two grounds for contesting that Petitioner procedurally defaulted—that Petitioner did not assert a due process objection and that he did not plead a license defense or a statutory exemption—are considered in turn below.

With regards to Petitioner's failure to assert a due process objection before the trial court, the Massachusetts Rules of Criminal Procedure prohibit litigants from assigning "as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . . ." Mass. R. Crim. P 24(b). It is undisputed that Petitioner did not raise the due process issue that he is pursuing here at his trial. Petitioner could have raised his due process issue at trial by objecting that the jury instructions allowed his convictions without proof that his coventurer had possessed the firearm illegally. [See Record at 409–12, 417, 460–63]. If the Appeals Court had denied Petitioner's appeal based on his failure to assert that objection, or otherwise raise the due process claim he is now pursuing, that would have been a procedural default supported by an adequate and independent state ground, as Massachusetts' contemporaneous objection rule is "regularly and consistently enforced." Pina, 565 F.3d at 53; see Hodge, 739 F.3d at 44 (The First Circuit has "held, with a regularity bordering on the

8

monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts."); Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015) ("A state procedural rule is adequate to preclude federal merits review 'so long as the state regularly follows the rule and has not waived it by relying on some other ground.'" (quoting Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011))). The Appeals Court, however, decided Petitioner's appeal based on Petitioner's failure to assert a license defense or an exemption, and without discussing any legal principles related to constitutional due process. See Dickie, 2015 WL 1401688.

Because the Appeals Court relied on petitioner's failure to assert a license defense, this Court must consider whether Petitioner's failure to plead a license defense (or statutory exemption or exception) was an adequate and independent state ground. The Appeals Court explained that Petitioner had the "burden of raising the defense of license" or an exception pursuant to Massachusetts Rule of Criminal Procedure 14(b)(3), and that because he did not do so, those defenses became "unavailable to him." Dickie 2015 WL 1401688, at *1. See McGuigan v. Hall, 312 F. App'x 986, 988 (9th Cir. 2009) (affirming procedural default through failure to comply with pleading rules that were clear and well-established). That finding of default was based upon Petitioner's failure to comply with a state procedural rule, which is an independent state-law ground.

Whether the default under Rule 14(b)(3) is also "adequate" turns on whether the application of that rule was consistent with due process. See Lee v. Kemna, 534 U.S. 362, 378, 375 (2002) ("'[T]he adequacy of state procedural bars to the assertion of federal questions' . . . is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal

9

question.'" (quoting Douglas v. Alabama, 380 U.S. 415, 422 (1965))). Petitioner does not assert that the rule has been "sporadically applied" or "irregularly put into practice," which are the "hallmarks of inadequacy." Hodge, 739 F.3d at 44. The rule was plainly stated in the Massachusetts Rules of Criminal Procedure, and had been applied as a procedural bar well before its use in Petitioner's case. E.g. Commonwealth v. Parzick, 835 N.E.2d 1171, 1177 (Mass. App. Ct. 2005) (affirming conviction based on failure to comply with rule 14(b)(3)).[4] Furthermore, Petitioner acknowledges that the "Commonwealth would have been required to bear the burden of proof that the third party acted unlawfully had Mr. Dickie . . . pleaded that the third party was licensed, . . . exempt from the licensing requirement, or . . . subject to an exception to the licensing requirement." [ECF No. 19 at 2]. The Appeals Court's finding of default was therefore based upon an adequate and independent state ground.

Petitioner's failure to assert a license defense (or an exemption or exception) forecloses "habeas relief unless the petitioner can 'demonstrate cause for the default and prejudice . . . , or, alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice.'" Barbosa v. Mitchell, 812 F.3d 62, 67 (1st Cir. 2016) (quoting Burks, 55 F.3d at 716). Petitioner may demonstrate cause by showing

---

[4] The Supreme Court has held that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." Kemna, 534 U.S. at 376. "The circuits agree that *Kemna* means such a procedural bar ruling must stand in all but exceptional circumstances." Hodge, 739 F.3d at 44 (citing Downs v. Lape, 657 F.3d 97, 107 (2d Cir. 2011); Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008)). This is not an "exceptional case." Cf. Kemna, 534 U.S. at 371–73, 376 (holding that case fit "within that limited category" where—following petitioner's inability to locate an alibi witnesses, denial of oral continuance motion based on judge's personal schedule, and petitioner's conviction for first-degree murder—state appeals court found procedural bar to review based on petitioner's noncompliance with requirement for a written continuance motion and supposed failure to demonstrate witness materiality).

that a "factual or legal basis for a claim was not reasonably available to counsel" if that unavailable ground acted as an "objective impediment[] to compliance with a procedural rule." Murray, 477 U.S. at 488. Here, Petitioner argues that he had cause for his default because, at the time of his trial, pleading a defense of license required the production of supporting evidence. [ECF No. 19 at 9–10].

Historically, Massachusetts courts had imposed a presumption that a coventurer's possession of a firearm was unlawful where defendants were charged on a joint venture theory. Commonwealth v. Gonzalez, 860 N.E.2d 37, 41 (Mass. App. Ct. 2007) (holding that a defendant prosecuted on a joint venture theory who is ignorant of his coventurer's license status "assumes the risk"). To "overcome this presumption, a defendant [had to] prove, through evidence such as a license . . . , that he comes under a provision in the relevant statutes setting forth certain exemptions or exceptions.'" Id. (quoting Commonwealth v. Cabral, 819 N.E.2d 951, 959 n.18 (Mass. 2005)). By the time of Petitioner's prosecution, however, the constitutionality of applying this presumption to a joint venturer had been cast into doubt by Gonzalez v. Dickhaut, No. CIV.A. 08-11657-RWZ, 2010 WL 4955559 (D. Mass. Nov. 30, 2010). In Dickhaut— decided a year before Petitioner's conviction and months before his arraignment—this court concluded that the due process rights of a habeas petitioner who had been prosecuted on a joint venture theory "were infringed by the use of a presumption to establish an element of the offense,"[5] and that "[b]urdening [the petitioner] with the presumption that [his coventurer]

---

[5] The Massachusetts Supreme Court has subsequently clarified that the defense of license is neither an element of an offense nor an affirmative defense. Humphries, 991 N.E.2d at 659–61. As the First Circuit observed in considering whether to consider a license defense as an element of the offense charged, "It is, of course, the duty of the state high court to construe the meaning of state statutes, including criminal offenses and rules of procedure, . . . [t]he SJC's exposition represents the very meaning of the statute intended by the state legislature, and we are duty bound, in no uncertain terms, to follow that state precedent." Powell v. Tompkins, 783 F.3d 332, 340 (1st Cir. 2015).

11

lacked a license [was] . . . contrary to federal law as established" by the Supreme Court. Id. at *2, 6.[6] As discussed above, after Petitioner's conviction, Humphries clarified that "a defendant charged with joint venture possession of a firearm bears only the burden of raising the defense of license. Once raised, the Commonwealth must prove beyond a reasonable doubt that the coventurer was not authorized to possess the firearm." 991 N.E.2d at 660.

Petitioner has not shown that any uncertainty about whether he would have been required to produce evidence of a license if he had raised such a defense impacted his decision to not assert that defense. The Supreme Court adopted the cause and prejudice standard in part to discourage "'sandbagging' on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off." Wainwright v. Sykes, 433 U.S. 72, 89–90 (1977). Here, as Petitioner acknowledged in his post-conviction motions, is it "undisputed that Jonathan Dickie was the principle" actor, was "prosecuted federally for these charges," served "eighteen months for all of his offenses," and was in custody or on parole throughout the course of the Petitioner's prosecution and trial. [See Record at 111].[7] Petitioner

---

[6] Although Mr. Gonzales had not notified the prosecution of a license defense under Massachusetts Rule of Criminal Procedure 14(b)(3), see Brief for the Commonwealth at 16, Commonwealth v. Gonzales, 860 N.E.2d 37 (Mass App. Ct. 2006) (No. 05-P-1383), 2006 WL 1499009, he had argued to the trial judge that the rule violated his due process rights, see Commonwealth v. Gonzalez, 860 N.E.2d 37, 40 (Mass. App. Ct. 2007) (noting that Gonzales argued for "a required finding of not guilty . . . because the applicable statute impermissibly shifts the burden of proof").

[7] On February 10, 2011, Jonathan Dickie was sentenced for one count of violating 18 U.S.C. § 922(a)(1)(A). Judgment as to Jonathan Dickie, United States v. Dickie, 1:10-cr-10240-WGY (D. Mass. Feb. 10, 2011), ECF No. 31. Under Section 922, it is "unlawful—for any person— except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce." Jonathan Dickie's federal conviction is not dispositive of whether he possessed a state firearm license or whether some other state exemption existed, but it informs the Court's consideration of the likelihood that Petitioner could have achieved a different result.

12

may have made the strategic choice to not assert the defense of license or an exemption in light of his knowledge that the Commonwealth would have been able to prove lack of license or an exemption. Although in light of Dickhaut, it is difficult to know how the prosecution and trial court would have proceeded had Petitioner attempted to raise a license defense, cause nonetheless requires "efforts to comply with the State's procedural rule." Lynch, 438 F.3d at 46 (quoting Murray, 477 U.S. at 488). Petitioner made no effort to comply with Massachusetts Rule of Criminal Procedure 14(b)(3), which by its own terms does not require the production of evidence to assert a defense.

If Petitioner wanted to assert a license defense or an exemption, he should have attempted to comply with Rule 14(b)(3) or raised the issue in some other way. He procedurally defaulted when he did not attempt to comply or object to being required to comply, and he has not shown that any uncertainty in how Rule 14(b)(3) would be applied to him acted as an objective impediment to compliance. He has therefore not shown cause for his procedural default.

## IV. CONCLUSION

For the reasons discussed above, the petition for a writ of habeas corpus is barred and is therefore DISMISSED. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254 Cases, R. 11(a). Out of an abundance of caution, the Court will issue a certificate of appealability in this instance so that Petitioner may appeal this Court's conclusion that he has not shown cause and prejudice for his default or a violation of his due process rights. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

March 3, 2019                                         /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE